Harris v. Wachovia Corp., 2011 NCBC 3.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 25270

CAMERON M. HARRIS, DOROTHY W. )
HARRIS and GARY HARRIS, )
               Plaintiffs )
                      )
         v. )
                      )
                      )
                      )
WACHOVIA CORPORATION, WELLS )
FARGO & COMPANY, G. KENNEDY )
THOMPSON, DONALD K. TRUSLOW, )
THOMAS J. WURTZ, BENJAMIN P. )
JENKINS, III, ROBERT K. STEEL and DOE )
DEFENDANTS 1 THROUGH 25, )
               Defendants )

**OPINION AND ORDER
ON DEFENDANTS'
MOTIONS TO DISMISS AND
FOR SUMMARY JUDGMENT**

       THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon the Defendants' Motion to Dismiss as to all Plaintiffs, pursuant to the provisions of Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and the Defendants' Motion for Summary Judgment as to Plaintiffs Cameron M. Harris and Dorothy W. Harris, pursuant to the provisions of Rule 56 (collectively, the Motion to Dismiss and Motion for Summary Judgment may be referred to as the "Motions"); and

THE COURT, having considered the Motions, the arguments and briefs in support of and opposition to the Motions and appropriate matters of record, CONCLUDES that the Motion to Dismiss should be GRANTED and that the Motion for Summary Judgment should be DENIED, as moot, for the reasons stated herein.[1]

*Pratt-Thomas Walker, PA by Lindsay Smith-Yancey, Esq. for Plaintiffs Cameron M. Harris, Dorothy W. Harris and Gary Harris.*

*Smith Moore Leatherwood, LLP by Robert R. Marcus, Esq. and Matthew N. Leerberg, Esq. for Plaintiffs Cameron M. Harris, Dorothy W. Harris and Gary Harris.*

*Robinson, Bradshaw & Hinson, PA by Louis A. Bledsoe, III, Esq. and Adam K. Doerr, Esq. for Defendants Wachovia Corporation, Wells Fargo & Company, G. Kennedy Thompson, Donald K. Truslow, Thomas J. Wurtz, Benjamin P. Jenkins, III and Robert K. Steel.*

Jolly, Judge.

I.

PROCEDURAL HISTORY

[1]    On October 1, 2009, at 2:37 p.m., Cameron M. Harris, Dorothy W. Harris and Gary Harris (collectively, "Plaintiffs") filed this civil action against Defendants Wachovia Corporation ("Wachovia" or the "Company"); Wells Fargo & Company ("Wells Fargo"); G. Kennedy Thompson ("Thompson"); Donald K. Truslow ("Truslow"); Thomas J. Wurtz ("Wurtz"); Benjamin P. Jenkins, III ("Jenkins"); Robert K. Steel ("Steel") (collectively, Thompson, Truslow, Wurtz, Jenkins and Steel are identified by the

---

[1] A related civil action was filed in Forsyth County on October 1, 2009, at 3:29 p.m. (the "Forsyth County Action"), although summons was not issued in that action until October 7, 2009. The Forsyth County Action is captioned *Robert E. Browne, III, et al. v. G. Kennedy Thompson, et al.*, and designated Forsyth County Civil Action No. 09 CVS 8588. In substance, the Forsyth County Action differs from the instant matter in that Plaintiffs in the Forsyth County Action added KPMG, Inc. as a party defendant. The Forsyth County Action raises the same substantive Rule 12(b)(6) issues as the instant action, and parallel Rule 12(b)(6) motions to dismiss were filed by all Defendants in the Forsyth County Action. By separate Opinion and Order of even date herewith, the court has ruled upon the respective motions to dismiss in the Forsyth County Action.

Complaint as the "Individual Defendants") and Doe Defendants 1 through 25 ("Doe Defendants"), alleging in substance that Defendants participated in a fraudulent scheme designed to deceive and defraud Plaintiffs into holding their shares of Wachovia common stock.

[2]     Plaintiffs allege the following claims ("Claim(s)"): First Cause of Action (Fraud/Fraudulent Concealment) against all Defendants; Second Cause of Action (Negligent Misrepresentation) against all Defendants and Third Cause of Action (Breach of Fiduciary Duty) against the Individual Defendants.

[3]     Defendants' Motion to Dismiss and Motion for Summary Judgment were filed December 14, 2009.  The Motions have been fully briefed and argued, and are ripe for determination.

II.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

Parties

[4]     At times material to the allegations, Plaintiffs collectively owned over 900,000 shares of Wachovia common stock, which has now been converted to Wells Fargo common stock.[2]

[5]     Wachovia is a North Carolina corporation with its principal office located in Charlotte, North Carolina.[3]

[6]     Wells Fargo is a Delaware corporation, headquartered in San Francisco, California.[4]

---

[2] Compl. ¶ 234.
[3] *Id.* ¶ 6.

The Individual Defendants currently are or have been directors of Wachovia at all relevant times.[5]

[7]    Defendant Thompson served as Wachovia's President and Chief Executive Officer from December 1999 through June 2, 2008.[6]

[8]    Defendant Wurtz served as Wachovia's Senior Executive Vice President and Chief Financial Officer at all relevant times.[7]

[9]    Defendant Truslow served as Wachovia's Chief Risk Officer at all relevant times.[8]

[10]    Defendant Steel, as Defendant Thompson's successor, served as Wachovia's President and Chief Executive Officer from July 9, 2008, through December 31, 2008.[9]

[11]    Defendant Jenkins is or was Vice Chairman, member of the Operating Committee and President of the General Bank of Wachovia at all relevant times.[10]

[12]    The Doe Defendants consist of the following: Does 1-5, the person, firm or corporation that employed any of the above-named individual Defendants; Does 6-10, the person, firm or corporation that acted as an agent or agency for any agency for any named or fictitiously identified defendant; Does 11-15, the person, firm or corporation that misrepresented or concealed certain material facts to and from the Plaintiffs; Does 16-20, the correct legal designation of that or those persons or entities who committed those acts of wrongful conduct as outlined in the Complaint and Does 21-25, the correct

---

[4] *Id.* ¶ 7.
[5] *Id.* ¶¶ 8-12.
[6] *Id.* ¶ 8.
[7] *Id.* ¶ 9.
[8] *Id.* ¶ 10.
[9] *Id.* ¶ 12.
[10] *Id.* ¶ 11.

legal designation of that or those persons or entities who are and/or were the principal, agent, employee or representative to any Defendant named in this action or any Defendant described fictitiously herein.[11]

### Wachovia's Acquisition of Golden West

[13]    The Individual Defendants participated in a fraudulent scheme designed to deceive Plaintiffs and the public as to the financial stability of Wachovia.  The scheme primarily grew out of Wachovia's 2006 acquisition of Golden West Financial Corporation ("Golden West"), a California-based bank and mortgage lender with a large portfolio of adjustable-rate mortgages known as "Pick-A-Pay" loans.[12]

[14]    Pick-A-Pay loans allow borrowers to select from four different payment options each month.[13]  Borrowers who make only the minimum payment, *i.e.* less than the accrued interest, experience "negative amortization," meaning the principal balance of the loan increases rather than decreases with each monthly payment.[14]  The monthly minimum payment also resets and adjusts annually, increasing the risk of default.[15]

[15]    When Golden West made Pick-A-Pay loans it did not rely on a borrower's credit score, but rather only required employment and asset verifications on a case-by-case basis.[16]

[16]    Golden West's Pick-A-Pay loans were extremely risky and susceptible to default and loss in a declining real estate market.[17]

---

[11] *Id.* ¶ 19.
[12] *Id.* ¶¶ 31-37.
[13] *Id.* ¶ 32.
[14] *Id.* ¶ 34.
[15] *Id.*
[16] *Id.* ¶ 37.
[17] *Id.* ¶ 42.

[17]     As a result of its acquisition of Golden West, Wachovia experienced unprecedented losses from 2006 to 2008.[18]  The Individual Defendants, faced with a rapidly deteriorating housing market and strained mortgage system, concealed information regarding underwriting standards, collateral quality and necessary reserves for their loans.[19]

[18]     Defendants also concealed problems relating to the value and accounting treatment of Wachovia's holdings in collateralized debt obligations.[20]

[19]     The Complaint details, at length, Wachovia's allegedly false public SEC filings, press releases and earnings calls regarding the financial strength, stability and liquidity of Wachovia, beginning in January 2007 and concluding in September 2008.[21]

Plaintiffs' Direct Communication with the Individual Defendants

[20]     In addition to the information provided to the public, Plaintiffs received false and misleading information concerning Wachovia's financial stability directly from Defendants Thompson and Jenkins.[22]

[21]     On or about June 28, 2007, Gary Harris spoke by telephone with Defendant Thompson regarding Wachovia and Gary Harris' investment in the Company.[23]  During this conversation, Thompson told Gary Harris that Wachovia's loan portfolio was "solid" and that Wachovia was not susceptible to the effects of the declining real estate market.[24]

---

[18] *Id.* ¶ 49.
[19] *Id.* ¶ 50.
[20] *Id.* ¶ 46.
[21] *Id.* ¶¶ 51-52.
[22] *Id.* ¶ 237.
[23] *Id.* ¶ 240.
[24] *Id.*

[22]    Between June 28, 2007, and June 2, 2008, Cameron Harris had several telephone conversations with Thompson regarding Cameron Harris' investment in Wachovia and the Company's financial viability.[25]  During each telephone conversation Thompson reassured Cameron Harris that Wachovia's loans were well-collateralized, the company had adequate loss reserves and the Golden West acquisition was helping Wachovia grow.[26]  Thompson reassured Cameron Harris that his and his family's investment in Wachovia was safe.[27]

[23]    On or about February 18, 2008, Thompson visited with Cameron and Gary Harris during a hunting trip.[28]  During the visit, Plaintiffs told Thompson they were considering selling their Wachovia stock.[29]  Thompson responded that their stock would be "okay" and that Wachovia was not planning on cutting its dividend.[30]  In holding their shares, Plaintiffs relied on Thompson's assurances.[31]

[24]    Plaintiffs also had direct communication with Defendant Jenkins regarding Wachovia and Wachovia's stock.[32]

[25]    On or about May 18, 2007, Cameron Harris called Jenkins to inquire whether the integration of Golden West into Wachovia was going well and whether Wachovia was experiencing any instability due to the decline in the real estate market.[33]

---

[25] *Id.* ¶ 241.
[26] *Id.*
[27] *Id.*
[28] *Id.* ¶ 243.
[29] *Id.*
[30] *Id.*
[31] *Id.* ¶ 246.
[32] *Id.* ¶ 247.
[33] *Id.* ¶ 249.

Jenkins assured Cameron Harris that the integration had gone well and that it was helping Wachovia grow stronger.[34]

[26]    Between May 18, 2007, and September 4, 2008, Cameron Harris telephoned Jenkins several times to inquire about the status of Wachovia's business and his investment in the company.[35]  In response, Jenkins represented that Wachovia's business was stable and its loan portfolio was well collateralized.[36]

[27]    In early 2008, Cameron and Dorothy Harris traveled by airplane with Jenkins between Palm Beach, Florida and Charlotte.[37]  During this trip, Plaintiffs inquired about the status of Wachovia's business and whether the Golden West merger was hurting Wachovia.[38]  Jenkins responded that the merger was going well and their investment in Wachovia was secure.[39]

[28]    During 2007 and 2008 Thompson, Truslow and Wurtz collectively sold over 200,000 of their Wachovia shares.[40]  By selling their shares soon after the Golden West acquisition, these Defendants engaged in insider trading.[41]

[29]    In late September 2008, Wachovia's share prices fell below $1 per share.[42]  Shortly thereafter, Wachovia announced a proposed sale of its banking assets to Citigroup; however, Wachovia ultimately rejected the Citigroup acquisition.[43]

[30]    On December 31, 2008, Wells Fargo consummated a merger with Wachovia and acquired all outstanding shares of Wachovia stock in a stock-for-stock

---

[34] *Id.* ¶ 250.
[35] *Id.* ¶ 251.
[36] *Id.*
[37] *Id.* ¶ 253.
[38] *Id.*
[39] *Id.* ¶ 262.
[40] *Id.* ¶ 262.
[41] *Id.* ¶ 263.
[42] *Id.* ¶ 276.
[43] *Id.*

transaction.[44]  Wachovia shareholders, including Plaintiffs, received 0.1991 shares of Wells Fargo common stock in exchange for each share of Wachovia common stock they owned.[45]

The Plaintiffs' Forbearance Agreement

[31]    From 2007 to 2008, Cameron and Dorothy Harris, either together or individually, borrowed over $24 million from Wachovia Bank, NA.[46]

[32]    Plaintiffs subsequently defaulted on these loans in 2008, at which time they owed Wachovia approximately $12.89 million.[47]  After the default, the Plaintiffs asked Wachovia to forbear from exercising its rights and remedies under the loan documents and to provide them with certain financial accommodations.[48]  Wachovia agreed, and the parties entered into a Forbearance Agreement (the "Agreement").[49]

[33]    The Agreement includes, among other things, a release ("the Release") executed by Plaintiffs as part of the consideration given for Wachovia's forbearance.

[34]    The Release reads in full as follows:

6.6 Release.

(a)    In consideration of the agreements of Bank contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges the Bank, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (the

---

[44] *Id.* ¶ 281.
[45] *Id.*
[46] Defs.' Br. Supp. Mot. Summ. J. 2.
[47] *Id.*
[48] *Id.*
[49] *Id.*

Bank and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contract, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Borrower or any of its successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstances, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with this Agreement, or any of the other Loan documents or transactions thereunder or related thereto; however, nothing herein shall (i) affect the rights of the Borrowers regarding withdrawals from their depository accounts other than the Collateral or Stock Accounts, and (ii) they may participate in the proceeds of any shareholders suit brought against the Releasees.[50]

III.

## DEFENDANTS' MOTION TO DISMISS

[35]    Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[36]    In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[37]    A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or

---

[50] Jones Aff. Ex. A.

(c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim.

*Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless (a) it does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) it appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief.  *Sutton*, 277 N.C. at 108.

## A.

### The Parties' Contentions

[38]    Defendants argue that Plaintiffs may not assert their individual Claims in this action because in substance the Claims seek to recover directly for loss caused by a wrong committed against the Company.  They contend that such Claims are derivative and rest solely with the corporate entity.[51]

[39]    Defendants rely on the general rule set out by the North Carolina Supreme Court in *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658 (1997), that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." They argue that Plaintiffs may not assert individual claims to recover for loss in the value of their shares when other Wachovia shareholders and the Company itself suffered similar losses.[52]

---

[51] Defendants' argument in substance raises a standing issue.  A party must have standing to assert a claim in order to invoke the subject matter jurisdiction of this court.  *See Estate of Apple v. Commercial Courier Express, Inc.,* 168 N.C. App. 175, 177, *disc. rev. denied,* 359 N.C. 632 (2005).
[52] Defs.' Br. Supp. Mot. Dis. 4.

[40]    Defendants also argue that even if Plaintiffs' Claims are not deemed to be fatally derivative, they nonetheless should be dismissed because North Carolina does not recognize "holder claims."   Such claims typically are actions for damages by shareholder plaintiffs who allege that they decided not to sell their shares because of a misrepresentation or failure to disclose unfavorable information.[53]  Defendants argue that because Plaintiffs were "holders," in that they neither bought nor sold shares in the Company at times material, they do not have any viable Claims.[54]

[41]    Defendants further argue that even if Plaintiffs' Claims are not derivative and are not deemed to be fatal holder claims, this court still should dismiss the Claims on various other grounds.

[42]    In response, the Plaintiffs argue that the Complaint asserts individual Claims for personal losses, not derivative claims for injuries to Wachovia.  They contend that the Claims fall within one or both of the two exceptions to the *Barger* preclusive ruling because (a) the individual Defendants owed Plaintiffs a special duty or (b) Plaintiffs suffered injuries separate and distinct from the injuries suffered by other Wachovia shareholders and the Company itself.[55]

[43]    Plaintiffs also contend that characterizing their Claims as "holder claims" should not prevent them from pursuing claims for actionable fraud because North Carolina recognizes claims of fraudulently induced inaction as well as fraudulently induced action.[56]

---

[53] *Id.*  9, relying on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).
[54] Whether North Carolina recognizes holder claims appears to be a matter of first impression.  Neither side of this litigation has presented any reported North Carolina case clearly dealing with the issue.
[55] Pls.' Br. Opp. Defs.' Mot. Dis. 5-11.
[56] *Id.* 13.

[44]     Plaintiffs further argue they have complied with all pleading requirements and have set forth sufficient facts to state individual viable causes of action for fraud, breach of fiduciary duty, breach of duties as corporate officials and negligence.[57]

B.

Discussion

1.

Derivative Claims

[45]     Under North Carolina law, if shareholders bring an action to enforce a primary right belonging to the corporation, their claim is derivative and the corporation is a necessary party.  *Howell v. Fisher*, 49 N.C. App. 488, 492 (1980).  North Carolina law requires shareholders to "seek to obtain their remedy within the corporation itself" before a derivative action can be brought.  *Bridges v. Oates*, 167 N.C. App. 459, 467 (2004).  One of these intracorporate remedies is the making of a "demand" upon the corporation to take suitable action.  Russell M. Robinson, II, ON NORTH CAROLINA CORPORATION LAW, § 17.03[1] (7th ed. 2009).

[46]     Under North Carolina's demand requirement:

> No shareholder may commence a derivative proceeding until: (1) written demand has been made upon the corporation to take suitable action; and (2) 90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

G.S. 55-7-42.

---

[57] *Id.*

[47]   "A plaintiff's failure to satisfy this demand requirement constitutes an insurmountable bar to recovery."  *Green v. Condra*, 2009 NCBC 21, ¶ 89 (internal quotations omitted).

[48]   As noted above, it is a well-established rule in North Carolina "that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock."  *Barger,* 346 N.C. at 658.

[49]   The theory behind the *Barger* rule is that "a shareholder cannot *individually* recover the lost value of his shares by alleging injury to the corporation and nothing more . . . ."  Robinson, *supra* § 17.02[1] (emphasis in original).  Accordingly, such a shareholder has no right to bring a direct action to recover that individual shareholder's proportion of the corporation's losses, especially not when any recovery would come out of the pockets of fellow shareholders.  *See Citibank v. Data Lease Fin. Corp.*, 828 F.2d 686, 693 (11th Cir. 1987) (the court observing that requiring derivative enforcement of a claim belonging to the corporation prevents an individual shareholder from gaining a benefit at the expense of other, similarly situated shareholders).  Courts also have noted that such a claim should be barred because awarding damages directly to an individual shareholder could impair the rights of creditors, whose claims may be superior to that of the innocent shareholder, *Outen v. Mical*, 118 N.C. App. 263, 267 (1995), and could give rise to "as many suits . . . as there were stockholders in the corporation."  *Kloha v. Duda*, 246 F. Supp. 2d 1237, 1243 (M.D. Fla. 2003) (internal citation omitted).

[50]    The fact that Plaintiffs here seek recovery from former officers of the corporate entity does not change the analysis.  As with other claims for injuries suffered by the corporation, claims against officers and directors are the property of the corporation,  *Parrish v. Brantley*, 256 N.C. 541, 544 (1962), including claims based in misrepresentation, fraud, and breach of duty.  *See, e.g.*, *Smith v. Waste Mgmt. Inc.*, 407 F.3d 381, 385 (5th Cir. 2005) ("[W]hen a corporation, through its officers, misstates its financial condition, thereby causing a decline in the company's share price when the truth is revealed, the corporation itself has been injured."); *see also Manzo v. Rite Aid Corp.*, 2002 WL 31926606 (Del. Ch. 2002) ("To the extent that plaintiff was deprived of accurate information upon which to base investment decisions, and as a result, received a poor rate of return . . . she experienced an injury suffered by all Rite Aid shareholders in proportion to their pro rata share ownership.  This would state a derivative claim.").

[51]    Indeed, under North Carolina law, "[o]ne of the clearest examples of a derivative action is a suit against the officers or directors for mismanagement of its affairs as constituting a breach of their fiduciary obligations to the corporation." ROBINSON § 17.02[1].

[52]    There are, however, two exceptions to the *Barger* rule:

> [A] shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a *special duty* or that the *injury suffered by the shareholder is separate and distinct* from the injury sustained by the other shareholders or the corporation itself.

*Regions Bank v. Reg'l  Prop. Dev. Corp.*, 2008 NCBC 8, ¶ 45 (2008) (quoting *Barger*, 346 N.C. at 658-59) (emphasis added).

[53]     To proceed under the first, or "special duty" exception to *Barger*, "the [special] duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual." *Barger*, 346 N.C. at 659 (internal quotations omitted). The special duty may arise from contract or otherwise. *Id.* "The existence of a special duty thus would be established by facts showing that defendants owed a special duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation." *Id.* A special duty has been found when an individual was induced to become a shareholder by the wrongful actions of a party. *Id.* at 659 (citing *Howell*, 49 N.C. App. at 498). Other examples include "when a party violated its fiduciary duty to the shareholder . . . when the party performed individualized services directly for the shareholder . . . and when a party undertook to advise shareholders independently of the corporation . . . ." *Id.* (internal citations omitted).

[54]     For the second, "separate injury" exception to *Barger* to apply, the alleged injury must be "peculiar or personal to the shareholder" and "separate and distinct from any damage suffered by the corporation." *Id.* (quoting *Howell*, 49 N.C. App. at 492).

[55]     Because the Company itself and other Wachovia shareholders ostensibly also were injured by the alleged misconduct complained of by Plaintiffs, it is clear that Plaintiffs' Claims, which they brought in their individual capacities, sound in the nature of derivative actions. Consequently, the central issue the court must address is whether any of the Claims fall within either of the two exceptions to the *Barger* rule. If so,

Plaintiffs may proceed with all or part of this lawsuit. If not, at this stage the suit may be pursued only by the Company, through its successor in interest.[58]

a.

Special Duty Exception to *Barger*

[56]    To establish the existence of a special duty, Plaintiffs must "allege facts from which it may be inferred that [Defendants] owed [Plaintiffs] a special duty." *Barger*, 346 N.C. at 659. Here, Plaintiffs allege that Defendants made misrepresentations directly to them regarding Wachovia's financial stability, thus giving rise to a special duty under North Carolina law.[59] Plaintiffs rely on their personal relationships with Defendants Thompson and Jenkins to assert they were owed a special duty by Thompson and Jenkins to report truthfully to them Wachovia's financial status following the Golden West acquisition.[60]

[57]    The parties have not cited and the court is not aware of any North Carolina reported appellate decisions addressing the issue of whether personal relationships between shareholders and officers of a corporation are sufficient to establish a special duty separate and apart from the duties owed to all shareholders; and as such, the issue appears to be one of first impression in North Carolina. For guidance, the court looks to another jurisdiction that has considered the issue.

---

[58] *Lewis v. Ward*, 852 A.2d 896, 906 (Del. 2004) (following a merger, the derivative rights pass to the surviving or parent corporation, which then has the right to prosecute the action); *see also Lambrecht v. O'Neal*, 3 A.3d 277, 286 (Del. 2010). In a double derivative suit, a stockholder of a parent corporation sues on behalf of the parent company for alleged wrongs to a subsidiary. *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). "A double derivative suit may properly allege any wrongs . . . indirectly incurred [by the parent company] by virtue of wrongs allegedly suffered by the subsidiary company." Joseph M. McLaughlin, *Directors' and Officers' Liability: Delaware Reaffirms Standing Requirements for Derivative Claims*, SIMPSON THACHER & BARTLETT (2004) http://www.stblaw.com/content/publications/pub470.pdf.
[59] Pls.' Br. Opp. Defs.' Mot. Dis. 7.
[60] *Id.*

[58]     In *Lee v. Marsh & McLennan Cos., Inc.*, No. 0097/2006 N.Y.S. LEXIS 8078, at *1 (N.Y.S. Dec. 7, 2007), the Supreme Court of New York of Nassau County addressed claims similar to those presented here.  The plaintiffs in *Lee* were beneficiaries of Frank Lee, who owned some two million shares of Defendant Marsh & McLennan Companies, Inc. ("Marsh") stock.  *Id.* at *1.  Fearing an investigation of Marsh by the New York Attorney General, Lee arranged a private meeting between himself and Marsh's CEO to discuss the potential investigation and any financial effects it would have on Marsh.  *Id.* at *2.  During this meeting, Marsh's CEO assured Lee that there was not going to be an investigation and that the company would not be affected by such rumors.  *Id.*  Shortly thereafter, the Attorney General did in fact issue a complaint against Marsh, and the value of the company's shares subsequently dropped.  *Id.* at *3.  The individual plaintiffs brought suit against defendants alleging breach of fiduciary duty, negligent misrepresentation and common law fraud.  *Id.*

[59]     The New York Supreme Court concluded that plaintiffs' claims, based upon the diminished value of their stock, were derivative in nature and thus subject to dismissal.  *Id.* at *6.  The court noted that the injury suffered by plaintiffs was entirely derivative because "'[a]ny devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder[.]'"  *Id.* at *5 (quoting *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988)).  The court rejected plaintiffs' assertion that the meeting between Lee and Marsh's CEO somehow brought their claims within the "limited circumstances where the same set of facts can give rise to both a direct claim and a derivative claim . . . ."  *Id.* at *6.  The court concluded that Lee "essentially received information functionally similar to

that currently available to all Marsh shareholders from whom the truth had also been withheld at that juncture and who therefore suffered ultimately the same type of injury sustained by the plaintiffs . . . ." *Id.*

[60]    In the instant case, Plaintiffs allege that the Individual Defendants "told Plaintiffs to their faces, over the phone and in their public statements, that the [C]ompany was financially stable and their investment was safe."[61]  It is clear from the allegations of the Complaint that the Individual Defendants were making the same alleged representations to Plaintiffs as they were making to the public at large.  Despite the factual allegations that Plaintiffs were independently assured and deprived of accurate information by Thompson and Jenkins, the same information also was being presented to or withheld from all Wachovia shareholders.  The Individual Defendants allegedly were making the same representations to Plaintiffs, Wachovia shareholders and the investing public at large.  The injuries complained of by Plaintiffs were the same as all other Wachovia shareholders, and there is nothing alleged in the Complaint sufficient to give rise by a special duty owing from Defendants to Plaintiffs separate from that owed to everyone else.

[61]    The court in *Lee* also expressed concern over the plaintiffs' "disingenuous assertion that [they] were not seeking inside information by scheduling the private meeting with [Marsh's CEO]."  *Id.* It observed that "[o]f course, '[if] the [plaintiffs] had received . . . [inside] information and sold their stock before the public was made aware [of it], such a profit would have resulted from insider trading in violation of the securities laws."  *Id.* (quoting *Crocker v. FDIC*, 826 F.2d 347, 351 n. 6 (5th Cir. 1987)).  Likewise, the Plaintiffs here argue that Defendants Thompson and Jenkins had a duty to disclose

---

[61] Pls.' Br. Opp. Defs.' Mot. Dis. 7.

truthful, inside information to them based on their close and personal relationships and private meetings and telephone conversations, notwithstanding that such a disclosure would be based upon inside information not available to the investing public or other Wachovia shareholders. To find the existence of such a duty would be "directly inconsistent with federal securities law which prohibits selective disclosure and which is designed to foster an honest market in which investors have equal access to information." *Chanoff v. United States Surgical Corp.*, 857 F. Supp. 1011, 1015 (Dist. Conn. 1994), *aff'd*, 31 F.3d 66 (2d Cir. 1994). This court has the same concerns as those raised in *Lee*. If the Harris Plaintiffs had (a) received the information they complain was withheld from them by Defendants before it was made aware to the trading public and (b) acted upon it by selling Wachovia shares, it is difficult to escape the conclusion that Plaintiffs would have profited by inside information at the expense of unknowing and innocent third-party purchasers. At best such a result would be unfair and improper. More likely, it also would have violated a host of securities laws.

[62]    Accordingly, the court CONCLUDES that as alleged in the Complaint in this action, the Plaintiffs' relationships with the various Defendants were not sufficient to establish a special duty on the part of those Defendants to disclose to Plaintiffs inside information not otherwise released to the public. Therefore, the Complaint does not contain sufficient allegations to support a finding or conclusion that Defendants owed Plaintiffs a special duty separate and apart from the duty owed to all Wachovia shareholders and the Company.

b.

Separate Injury Exception to *Barger*

[63]     For Plaintiffs' Claims to fall under the second exception to *Barger*, they must allege "an individual loss, separate and distinct from any damage suffered by the corporation."  346 N.C. at 659.

[64]     Only when a shareholder "allege[s] a loss peculiar to himself by reason of some special circumstances or special relationship to the wrongdoers," may he pursue an individual action.  Robinson, *supra* 17.02[1].

[65]     Courts have interpreted such situations to include negligent misrepresentations made by officers or directors to induce individuals to buy stock and inducing individuals to place deposits in a bank when directors knew the bank was insolvent.  *See Howell*, 49 N.C. App. at 498; Robinson, *supra* 17.02[1] (citing *Bane v. Powell*, 192 N.C. 387, 391 (1926)).

[66]     Plaintiffs assert that the misrepresentations made by Defendants that induced them to hold on to their shares are different from general allegations of corporate mismanagement, and therefore, are sufficient to establish a separate and personal injury.[62]

[67]     Plaintiffs' "lost profit opportunity" claim is nothing more than a claim for diminution in the value of Wachovia stock, which may only be asserted derivatively. *See Arent v. Distrib. Servs., Inc.*, 975 F.2d 1370, 1373 (8th Cir. 1992).

[68]     Any harm caused by Defendants was shared by all Wachovia shareholders proportionately.  The fact that Plaintiffs frame the harm as a direct injury "[does] not permit them to go forward on a claim that [is], at its core, derivative."  *Id.*

---

[62] Pls.' Br. Opp. Defs.' Mot. Dis. 9.

[69]     Even though Plaintiffs contend the injuries suffered were the result of their personal relationships with Defendants, "[i]t is clear that the underlying, causative factor which actually created the decrease in stock value was alleged corporate mismanagement . . . ." *Lee*, LEXIS 8078, at *5.

[70]     The court is not persuaded by Plaintiffs' assertions that Defendants somehow caused Plaintiffs to suffer a distinct personal injury by failing to disclose inside information regarding Wachovia's financial stability sought by Plaintiffs during private meetings and telephone conversations.  Plaintiffs did not suffer a peculiar and personal injury because they were not successful in obtaining inside information from Defendants during these private meetings.  As previously discussed, had Plaintiffs obtained inside information and sold their stock before the rest of Wachovia's shareholders and the public were aware, they likely would have violated federal securities laws.  *See Chanoff*, 857 F. Supp. at 1015.

[71]     Defendants' alleged non-disclosures deprived all [Wachovia] shareholders of accurate, negative information about the Company.  While such actions theoretically affected their investment decisions and caused fiscal injury, the non-disclosures did not injure Plaintiffs in a materially different or distinct way from the investing public or other Company shareholders.  *Arent*, 975 F.2d at 1372.

[72]     Accordingly, the court CONCLUDES that the allegations of the Complaint are not sufficient to support a finding or conclusion that Plaintiffs suffered injury different or "separate" from that suffered by other Wachovia shareholders.

2.

Holder Claims

[73]    Even though during times material the Plaintiffs neither bought nor sold Wachovia shares, they seek damages for the profits they allege they could have realized if they had sold their Wachovia shares before the Wachovia merger with Wells Fargo was announced.  Plaintiffs allege that they would have sold their Wachovia shares at a much higher price if the Defendants had not wrongfully convinced them to do otherwise.  Plaintiffs allege that they intended to sell their shares of Wachovia stock on several occasions, but refrained from selling in reliance upon the misrepresentations and non-disclosures ascribed to Defendants.  They seek damages as a result.

[74]    A claim for damages suffered by shareholders who, like Plaintiffs, allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material, after which there was a fall in the stock's value, is known as a "holder claim."  Defendants contend that North Carolina law does not recognize such claims.  Further, they argue that even if this state did recognize such claims, in the context of the instant case they would be derivative in nature and suffer from the same lack of standing that they contend infects Plaintiffs' other Claims.

[75]    A decline in share price caused by the untimely disclosure of unfavorable financial data often produces harm to all of a corporation's shareholders, indirectly injuring all.  Such claims cannot be brought under federal securities law, *Blue Chip Stamps*, 421 U.S. at 739-55; as class actions under state or federal law, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86 (2006) or pursuant to North Carolina's blue sky laws, G.S. 78A-56.  Instead, plaintiffs in holder cases typically seek

to ground their claims in state common law, and most courts presented with such claims have rejected them.  *See, e.g.*, *Arent*, 975 F.2d at 374 (Minnesota law); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692 (7th Cir. 1990) (Illinois law); *Crocker v. FDIC*, 826 F.2d 347, 349-52 (5th Cir. 1987) (Mississippi law); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, No. MDL-1446, 2007 WL 789141, at *13 (S.D. Tex. Mar. 12, 2007) (Texas law); *Arnlund v. Deloitte & Touche LLP*, 199 F. Supp. 2d 461, 486-90 (E.D. Va. 2002) (Virginia law); *WM High Yield Fund v. O'Hanlon*, No. Civ. A. 04-3423, 2005 WL 1017811, at *13 (E.D. Pa. Apr. 29, 2005) (Pennsylvania law); *Chanoff,* 857 F. Supp. at 1018 (Connecticut law); *Manzo*, 2002 WL 31926606 at *5 (Delaware law) and *Lee*, LEXIS 8078 (New York law).

[76]    On the theory that holder claims would threaten to benefit individual shareholder plaintiffs at the expense of other shareholders similarly situated, numerous courts have dismissed such claims as being inherently derivative.  *See Arent,* 975 F.2d 1370; *Kagan,* 907 F.2d 690; *Crocker,* 826 F.2d 347; *Barsky v. Arthur Andersen, LLP,* 2002 WL 32856818 (S.D. Tex. Aug. 16, 2002); *Chanoff,* 857 F. Supp. 1011; *Lee*, LEXIS 8078 and *Shirvanian v. DeFrates*, 161 S.W.3d. 102 (Tex. Ct. App. 2004).  Such courts often have concluded that holder claims are derivative in order to ensure that holder claimants do not realize a benefit at the expense of other similarly situated shareholders.  *Smith,* 407 F.3d at 385.

[77]    Holder claims brought on the basis of alleged untruthful public statements present inherent conceptual difficulties.  For example, in the instant case, Plaintiffs allege they would have sold their stock if they had known the truth about the declining value of Wachovia's mortgage and collateralized debt obligations.  However, by

complaining that Defendants concealed the truth and published false but reassuring misrepresentations to financial markets – and accordingly to Plaintiffs – Plaintiffs necessarily are caught in a "catch 22" damages paradox.  Plaintiffs' argument is that (a) the Defendants wrongfully concealed the true facts about the Bank's declining financial condition, (b) when the truth emerged the Bank's share values declined precipitously and (c) that they therefore were damaged by not selling their shares at pre-disclosure prices.  However, Plaintiffs cannot escape the reality that publicly communicated truths affect and move markets just as much as publicly communicated falsehoods. Consequently, had Defendants published truthful negative information, it necessarily follows that the stock price would have fallen accordingly and there would have been no market for the Plaintiffs' shares at the previously artificially inflated higher prices.  As one court has observed,

> We cannot help but observe the troublesome paradox presented by the [Plaintiffs'] theory: on the one hand, they claim the defendants' scheme caused their injury; yet, on the other hand, without the scheme, the . . . shareholders could never have realized the artificially high profit that they claim to have unjustly lost.

*Crocker*, 826 F.2d at 351-52 (internal citations omitted).

[78]     Accordingly, in the context of holder claims, courts "generally have not looked with favor upon artificially framed reliance and damages theories by which shareholders attempt to exploit, solely for themselves, the difference between 'inflated' predisclosure stock prices and the significantly lower values which later exist once the damaging disclosures have finally been made to the market in general."  *Lee*, LEXIS 8078 at *6.  Such courts have been reluctant to allow plaintiffs to "cash in on the fraud" by alleging that they should have been able to sell their shares at an inflated price to

another shareholder who did not know about the fraud, as observed by Chief Justice Roberts during oral argument in *Dabit.* Transcript of oral argument at 29, 547 U.S. 71.

[79]     In addition, holder claims present substantive difficulties with regard to the elements of causation and damages in that by definition they are of a speculative nature that relies upon subjective and self-interested testimony. For example, in the instant matter, the Plaintiffs allege that they were "considering" a sale of their stock in the summer of 2007 and in February 2008 and would have sold had they not relied on Defendants' purported misrepresentations. Unlike a typical securities claim involving a precise date, number of shares, price, and profit or loss, Plaintiffs' holder claims involve only a hypothetical transaction. To calculate damages, the court would have to determine when Plaintiffs would have sold their share had they possessed information that they did not, in fact, possess. Further, because the allegations involve public misrepresentations, further analysis would be required with regard to what would the stock price set by the market have been at the time of Plaintiffs' proposed sale if accurate information had been published. Consequently, most courts have concluded that such claims are so speculative that they simply are not actionable. *See Chanoff*, 857 F. Supp. 2d at 1018 ("[C]laims for damages based on the plaintiffs' failure to sell or hedge their stock are too speculative to be actionable.").

[80]     The few courts that have recognized holder claims have imposed strict pleading requirements, concluding that a plaintiff must allege specific factual actions, rather than unspoken and unrecorded "plans," with regard to anticipated sale of the shares in question. *See Small v. Fritz Companies*, 65 P.3d 1255, 1265 (Cal. 2003). For example, in *Rogers v. Cisco Systems, Inc.*, 268 F. Supp. 2d 1305, 1314 (N.D. Fla.

2003), the court dismissed holder claims where plaintiffs did not "allege specifically, *how many shares* they would have sold and *when* they would have sold them." (emphasis in original). Contrary to the requirements of those jurisdictions, in the instant action the Plaintiffs have alleged only in a conclusory fashion that they "considered" selling or "intended to sell" their Bank shares on "several occasions."[63] Such allegations appear to have been rejected as not sufficient even by those courts that recognize some form of a holder claim. *See Amzak Corp. v. Reliant Energy, Inc.*, 2004 WL 1882482, at *6 n. 3 (N.D. Ill. 2004) (dismissing a holder claim because, even assuming that Illinois would recognize such actions, plaintiffs did not plead with particularity or articulate a coherent theory of damages); *Rogers,* 268 F. Supp. 2d at 1314 (dismissing holder claims where plaintiffs "do not allege specifically, *how many shares* they would have sold and *when* they would have sold them") (emphasis in original).

[81]    The court concludes that because holder claims are both derivative and highly speculative in nature, North Carolina has not recognized such claims as actionable, and it is unlikely to do so. Further, even if North Carolina were to recognize such claims in limited discrete and narrow fact situations that are specifically and factually pled, the allegations in the Complaint in this civil action as a matter of law are insufficient to meet such a standard.

## C.

### Conclusion

[82]    The court is sensitive to the material and sometimes devastating financial impact upon Wachovia shareholders caused by the precipitous and unanticipated market decline in Wachovia share value at times material to this matter. However, the

---

[63] Compl., ¶ 259.

court is forced to conclude that the Claims alleged by Plaintiffs in the Complaint in this civil action seek to recover directly for losses suffered by Plaintiffs but caused by alleged wrongs committed against the Company. The Claims are derivative and rest solely with the Company.[64] Further, to the extent the Claims constitute holder claims, they are not actionable. The respective Claims may not be asserted by Plaintiffs by way of this action. Accordingly, Defendants' Motion to Dismiss should be GRANTED.

[83] The court's conclusion that the Claims cannot be asserted by Plaintiffs is dispositive of this civil action. Consequently, further discussion is not necessary with regard to whether (a) the various Claims meet the specificity requirements of the Rules and (b) whether North Carolina and South Carolina securities laws support any of the Claims.

IV.

Motion for Summary Judgment

[84] The court having concluded that Defendants' Motion to Dismiss should be granted, the Motion for Summary Judgment is rendered moot and should be DENIED. Further discussion of the Motion for Summary Judgment is not necessary.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it hereby is ORDERED that:

---

[64] The court observes that several other Wachovia shareholder suits raising substantially the same issues as those in the instant action have resulted in similar disposition at the trial level. Two such cases were submitted by Defendants as representing subsequent authority. *See Rivers v. Wachovia Corp.,* No. 2:09-CV-2941-PMD, 2010 U.S. Dist. LEXIS 84890 (S.C. June 23, 2010); *Rice-Marko v. Wachovia Corp.,* S.C. Ct. Comm. Pleas, No. 2009-CP-10-6230 (August 19, 2010). While not controlling, the opinions expressed by the courts in those actions are instructive. Plaintiffs also submitted a case as representing subsequent authority. *See Holmes v. Grubman*, 691 S.E.2d 196 (Ga. 2010). The court concludes that *Holmes*, involving a claim against a broker by an investor, although somewhat instructive, is so factually distinguishable that it is not materially supportive of Plaintiffs' contentions.

[85]     The Defendants' Motion to Dismiss is GRANTED and this civil action is DISMISSED, in its entirety.

[86]     The Defendants' Motion for Summary Judgment against Plaintiffs Cameron M. Harris and Dorothy W. Harris is DENIED as moot.

[87]     Taxable costs shall be charged to Plaintiffs.

This the 23rd day of February, 2011.