Atkinson v. Lackey, 2015 NCBC 13A (Amended 02-27-2015).

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 12 CVS 7600 |

WILLIAM M. ATKINSON, JEFF
MITCHELL, and JERROLD O'GRADY,

        Plaintiffs,

v.

WILLIAM LACKEY, ROSS SALDARINI;
SCOTT S. MEHLER; BLACKHAWK
PACIFIC CAPITAL, LLC; and
BLACKHAWK PACIFIC FUND I, LLC,

        Defendants.

**ORDER AND OPINION**

{1}    **THIS MATTER** is before the Court upon Plaintiffs William M. Atkinson ("Atkinson"), Jeff Mitchell ("Mitchell"), and Jerrold O'Grady's ("O'Grady") (collectively, "Plaintiffs") Motion for Partial Summary Judgment and Defendants William Lackey ("Lackey"), Ross Saldarini ("Saldarini"), BlackHawk Pacific Capital, LLC ("Pacific Capital"), and BlackHawk Pacific Fund I, LLC's (the "Pacific Fund") (collectively, "Defendants") Motion for Summary Judgment (collectively, the "Motions") in the above-captioned case.

{2}    The Court, having considered the Motions, affidavits and supporting briefs, as well as the arguments of counsel at the September 30, 2014 hearing in this matter, hereby **DENIES** Plaintiffs' Motion and **GRANTS in part** and **DENIES in part** Defendants' Motion.

*Nexsen Pruet, PLLC by William R. Terpening, Matthew S. DeAntonio, Richard S. Wilson, and Christopher C. Lam for Plaintiffs William M. Atkinson, Jeff Mitchell, and Jerrold O'Grady.*

*James, McElroy & Diehl, P.A. by John R. Buric and Jon P. Carroll for Defendants William Lackey, Ross Saldarini, BlackHawk Pacific Capital, LLC and BlackHawk Pacific Fund I, LLC.*

Bledsoe, Judge.

# I.
## PROCEDURAL HISTORY

{3}     Plaintiffs' claims arise from their allegations that Defendants fraudulently induced them to invest in the Pacific Fund by misrepresenting the Pacific Fund's ownership of and security interests in several properties in coastal South Carolina.

{4}     Plaintiffs, together with Robert Bertram ("Bertram") and Jack P. Scott ("Scott"), initiated this action on April 18, 2012, alleging claims against Defendants, Scott Mehler ("Mehler"), Bill Grier ("Grier"), BlackHawk Talon Fund II, LP ("Talon Fund"), and BlackHawk Management, LLC ("BHM") for securities fraud, fraud, unfair and deceptive trade practices ("UDTP") under N.C.G.S. § 75-1.1 ("UDTPA"), breach of fiduciary duty, and constructive fraud.   Defendants answered the Complaint and asserted four counterclaims.

{5}     This case was assigned to the Business Court (Murphy, J.) on April 24, 2012 and subsequently assigned to the undersigned on July 2, 2014.

{6}     All claims by and against Bertram, Scott, Talon Fund, BHM, and Grier have been dismissed, as have all claims against all Defendants related to the Talon Fund. (Joint Stipulation of Partial Dismissal with Prejudice, June 24, 2014.)   Defendants have also dismissed all Counterclaims against Plaintiffs with prejudice.   (*Id.*)

{7}     Plaintiffs filed their Motion for Partial Summary Judgment on June 30, 2014, seeking judgment against all Defendants, including Mehler, on Plaintiffs' claims for securities fraud, UDTP, breach of fiduciary duty, and constructive fraud. Plaintiffs do not seek summary judgment against any Defendant on their claim for common law fraud.

{8}     Defendants filed their Motion for Summary Judgment on July 1, 2014, seeking judgment in favor of Defendants Lackey and Saldarini on Plaintiffs' claims for securities fraud, common law fraud, UDTP, breach of fiduciary duty, and constructive fraud, and in favor of Defendants Pacific Capital and the Pacific Fund on Plaintiffs' claim under the UDTPA.   In addition, Defendants jointly seek summary judgment dismissing all of Atkinson's claims, except constructive fraud and UDTPA, by operation of the applicable statute of limitations.

{9}   The Court held a hearing on the Motions on September 30, 2014, at which all parties, except Mehler, were represented by counsel.   Mehler did not respond to Plaintiffs' Motion, did not join Defendants' Motion, and did not appear at the hearing. The Motions are now ripe for resolution.

II.

FACTUAL BACKGROUND

{10}   "Although findings of fact are not necessary on a motion for summary judgment, it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010).   Therefore, the Court recites the material and undisputed facts to decide the Motions and not to resolve issues of material fact.

{11}   The Pacific Fund is a North Carolina limited liability company ("LLC") that was formed to "build investment returns by actively partnering with and providing equity financing to experienced developers and builders on select projects in the Southeast." (Pls.' Br. Supp. Mot., p. 2.)

{12}   Pacific Capital was a member and the sole manager of the Pacific Fund and had "sole, full, exclusive and complete power and authority to manage the affairs of the [Pacific Fund] and to perform any and all acts on behalf of the [Pacific Fund] that it deem[ed] appropriate and necessary." (Pls.' Br. Supp. Mot., p. 3.)

{13}   Lackey, Saldarini, and Mehler managed Pacific Capital, and through Pacific Capital, the Pacific Fund. (Pls.' Br. Supp. Mot., p. 3.; Ex. M.)

{14}   The Pacific Fund investments at issue in this litigation involve a lot in DeBordieu Colony ("DeBordieu"), "a private, gated, ocean front community outside Georgetown, South Carolina," (Compl. ¶ 82), an investment in Mariner's Walk, "a 308 acre, 343 lot, $56 million residential development with deep water marina on [the] Sampit River [near] Winyah Bay in Georgetown, South Carolina," (*Id.* ¶ 84), and an investment in Bulls Bay Estates ("Bulls Bay"), "a 195 acre, 390 lot, $50 million residential development on the Intracoastal Waterway outside of [Charleston, South Carolina]." (*Id.*)

{15}  The Pacific Fund began soliciting investments from Plaintiffs and other investors in 2007. Plaintiffs allege that Defendants provided them several documents and made certain specific representations that induced them to invest in the Pacific Fund.

{16}  In particular, Mitchell contends that Mehler took him to view a lot in DeBordieu and represented that the Pacific Fund owned the property. (Pls.' Br. Supp. Mot., p. 4.; Ex. G.)  Similarly, O'Grady contends that Mehler orally represented to him that the Pacific Fund owned property in DeBordieu. (Pls.' Br. Supp. Mot., p. 4.; Ex. H.)

{17}  In addition, Atkinson testified that he received a promotional email on February 8, 2007 from Mehler (the "February 2007 email") that (1) described the Pacific Fund's DeBordieu investment as "a $500,000 land purchase equity in a $2.6 million single family home-site development in DeBordieu Colony"; (2) stated that the Mariner's Walk investment "is secured by all of the (deep water) property and other assets of the developer"; and (3) stated that the Bulls Bay investment was a "$1 million secured debt and deep water land purchase in Bulls Bay Estates." (Pls.' Br. Supp. Mot., Ex. O.)  The February 2007 email displayed Lackey and Saldarini's names at the bottom of the email as signatories but indicated that the email came from Mehler's email account. (*See id.*)

{18}  Plaintiffs also testified that they received a promotional document entitled "Real Estate Opportunity Fund I: The Coastal Development Fund" (the "Coastal Development Fund") from Mehler that described the DeBordieu investment as a "$600,000 land purchase equity" and stated that the Bulls Bay and Mariner's Walk investments were "secured" debt investments. (Pls.' Br. Supp. Mot., Exs. D, G–H, N.)

{19}  Finally, Plaintiffs acknowledge that they received a Private Placement Memorandum ("PPM"), dated August 15, 2006, before they invested in the Pacific Fund.  The PPM contained various representations related to the Pacific Fund's holdings, including the following:

    a.  "The Fund portfolio holds $2MM worth of investments to date -- $1 MM in Bulls Bay, a 350 lot residential community on the inter-coastal

waterway outside of Charleston, SC and $1MM in [DeBordieu] Colony, a private, gated ocean front community outside Georgetown, SC. BHP projects returns on equity of 54% and 28%, respectively." (Pls.' Br. Supp. Mot., Ex. M);

b. "DeBordieu Development. One of the Company's Members, P3 One, LLC, purchased a lot for approximately $1 million and entered into a development agreement with . . . Principal, Scott Mehler, (the "Developers") whereby the Developers will finance and manage the development of a single family home on the lot for the purpose of selling the home and lot . . . . P3 One intends to contribute the home, its interest in the ownership of same, or its profits interest in the sale to Company. Because of the complexities of the 1031 aspect of the lot ownership, Company and P3 One are currently working towards a structure that will allow the Company to realize 100% of P3 One's gain from the transaction." (*Id.*);

c. "Bulls Bay Development. Company invested $1 million of a total of $5 million equity financing for the development of 'Bulls Bay Estates', an Intracoastal residential community with 390 lots worth $50.1MM in Awendaw, SC. The equity investors purchased a $2.5MM water front lot and the remaining investment was in the form of a $2.5MM note. The developer agreed to purchase the lot from the equity investors for $3.5 million in 18 months. The principal and interest on the note pay out in 18 months with a total return of 40%. The Company will also receive 1% ownership in Bulls Bay project." (*Id.*)

{20} The PPM did not reference any investment in Mariner's Walk. (*Id.*)

{21} The PPM also included an integration clause that stated "[n]o person has been authorized in connection with this offering to make any representations other than as contained in this confidential private placement memorandum" (*id.*), and further provided that "[n]othing contained in this confidential [PPM] is, or should be relied upon as, a promise or representation as to the future performance of the

Company" and that "no representation is made as to the accuracy of any forward looking statements, estimates or projections contained in this confidential [PPM]." (*Id.*) The PPM also included a Subscription Agreement, signed by each Plaintiff, that provided that the Subscription Agreement "contains the entire agreement of the parties with respect to the matters covered hereby or thereby, and there are no representations, warranties, covenants or other agreements except as contained herein and therein."

{22} After receiving the documents and representations referenced above, each Plaintiff invested in the Pacific Fund and also executed the Pacific Fund Operating Agreement. Atkinson invested $100,000 on April 13, 2007; Mitchell invested $200,000 on December 14, 2007; and O'Grady invested $200,000 on January 8, 2008. (Pls.' Br. Supp. Mot., p. 5; Defs.' Br. Supp. Mot., p. 2.)[1]

{23} Plaintiffs' claims are based on their contention that, contrary to Defendants' representations, the Pacific Fund never owned property in DeBordieu and never held secured debt investments in Mariner's Walk and Bulls Bay. As a result, Plaintiffs claim they were fraudulently induced into making unprofitable investments and have thereby suffered the total loss of their investments. (Pls.' Br. Supp. Mot., p. 8.)

{24} Defendants deny all wrongdoing and contend that the evidence of record is undisputed that they truthfully represented at all times that the Pacific Fund's "primary investments consisted of equity financing for [DeBordieu, Bulls Bay, and Mariner's Walk]." (Defs.' Br. Supp. Mot., p. 3.) Defendants further contend that the undisputed evidence of record establishes that Lackey and Saldarini did not participate in any fraudulent conduct, entitling them to summary judgment on all of

---

[1] The Operating Agreement purports to limit the liability of Pacific Fund's managers. Specifically, Section 11.03(a) states that "[n]o Manager shall be liable for the obligations of the Company solely by reason of being a Manager or participating in the management of the Company's affairs. The liability of a Manager for any breach of the duties described in Section 11.01 shall be limited or eliminated to the fullest extent permitted by law. No Manager shall be liable for action taken in such capacity if such Manager performs the duties of such office in accordance with Section 11.01." (Pls.' Br. Supp. Mot., Ex. M.) Section 11.01 states that "the Manager shall discharge its duties as such in good faith, with the care of an ordinary prudent person in a like position would exercise under similar circumstances, and in a manner that such Persons reasonably believe to be in the best interests of the Company." (*Id.*)

Plaintiffs' claims, and that Pacific Capital and the Pacific Fund are entitled to dismissal of Plaintiffs' claim under N.C.G.S. § 75-1.1 because securities transactions are outside the scope of that statute.

## III.
### LEGAL STANDARD

{25} Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. Rule 56(c) (2014). "A genuine issue of material fact has been defined as one in which 'the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail . . . .'" *Smith v. Smith*, 65 N.C. App. 139, 142, 308 S.E.2d 504, 506 (1983). The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Whitley v. Cubberly*, 24 N.C. App. 204, 206, 210 S.E.2d 289, 291 (1974); *See generally McKee v. James*, 2014 NCBC 73 ¶ 31 (N.C. Super. Ct. Dec. 31, 2014), www.ncbusinesscourt.net/opinions/2014_NCBC_73.pdf (discussing standard).

## IV.
### ANALYSIS

#### A. <u>Standing</u>

{26} As a preliminary matter, Defendants raise challenges to Plaintiffs' standing to bring individual claims in this matter. (Defs.' Br. Resp. Pls.' Mot., p. 16.) Although Defendants have not filed a motion under Rule 12(b)(1), standing is a "necessary prerequisite to the [C]ourt's proper exercise of subject matter jurisdiction" and the Court may raise "such defect on its own initiative." *Am. Woodland Indus. v. Tolson*, 155 N.C. App. 624, 626–27, 574 S.E.2d 55, 57 (2002); *Jackson Cnty. v. Swayney*, 75 N.C. App. 629, 630, 331 S.E.2d 145, 146 (1985), *rev'd in part on other grounds*, 319 N.C. 52, 352 S.E.2d 413 (1987).

{27}  Plaintiffs are members of the Pacific Fund and seek to assert direct claims against all Defendants to enforce rights Plaintiffs claim belong to them personally. Defendants do not appear to contest Plaintiffs' standing to bring claims under the North Carolina Securities Act,[2] but do appear to challenge Plaintiffs' standing to assert its remaining claims for breach of fiduciary duty, fraud, constructive fraud and unfair and deceptive trade practices.  Plaintiffs' standing to assert these claims turns on whether the claims are direct or derivative, which in turn depends on whether Plaintiffs' claimed injury is an injury to the Pacific Fund or to Plaintiffs individually. *See, e.g., Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 879 (2002) ("[A] derivative action is one brought by a shareholder 'in the right of a corporation'" and "[a]n individual action 'is one a shareholder brings to enforce a right which belongs to him personally.'").

{28}  The general rule in North Carolina is that "[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation."  *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220–21 (1997).  Further, "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Id.* at 658, 488 S.E.2d at 219; *See Harris v. Wachovia Corp.*, 2011 NCBC 3 ¶ 49 (N.C. Super. Ct. Feb. 23, 2011), www.ncbusinesscourt.net/opinions/2011_NCBC_3.pdf (citing Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.02[1] (7th ed., 2009) ("The theory behind [this] rule is that 'a shareholder cannot individually recover the lost value of his shares by alleging injury to the corporation and nothing more . . . .'")).

{29}  Generally, the proper vehicle for a claim arising from injury to a corporation or a limited liability company is a derivative action, typically because "[t]he loss of an

---

[2] N.C.G.S. § 78A-56(a)(2) provides an individual cause of action for "any person purchasing a security," for which rescission and recovery of the consideration paid are the available remedies. The Court addresses Plaintiffs' securities fraud claims in Section IV.B.i below.

investment 'is identical to the injury suffered by' the corporate entity as a whole." *Green v. Freeman*, 367 N.C. 136, 144, 749 S.E.2d 262, 269 (2013).

{30} The North Carolina Supreme Court has recognized two exceptions to this general rule, holding that "shareholders, creditors and guarantors may bring an individual action against a third party for breach of fiduciary duty when (1) 'the wrongdoer owed [them] a special duty' or (2) they suffered a personal injury 'distinct from the injury sustained by . . . the corporation itself.'" *Id.* at 142, 759 S.E.2d at 268 (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219). "The existence of a special duty thus would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation." *Barger*, 346 N.C. at 659, 488 S.E.2d at 220.

{31} Significantly for this case, our courts have held that a special duty will exist "when the wrongful actions of a party induced an individual to become a shareholder." *Id.*; *see Howell v. Fisher*, 49 N.C. App. 488, 498, 272 S.E.2d 19, 26 (1980). Here, Plaintiffs claim Defendants misrepresented that Pacific Fund owned property in DeBordieu and that the Mariner's Walk and Bulls Bay investments were secured, and, in turn, that Plaintiffs would not have invested in the Pacific Fund absent those representations. Accordingly, Plaintiffs contend they were induced to become members of and investors in the Pacific Fund by the wrongful actions of Defendants. As such, Plaintiffs have standing to assert their claims under *Howell*. The Court addresses the legal sufficiency of these claims for summary judgment purposes below.[3]

---

[3] The Court notes that Plaintiffs' claims here arguably do not involve a loss to the Pacific Fund at all – indeed, the Pacific Fund was the beneficiary recipient of Plaintiffs' investments, and the actual value of the Pacific Fund's investments was constant at all times regardless of Defendants' representations about them. Thus, Plaintiffs' claims arguably could be seen as direct claims on their face and fall outside the *Barger* analysis altogether. Nevertheless, in light of the similarity of the relevant operative facts in this case to those in *Howell*, the Court finds that the special duty exception has been met, assuming for these purposes that an injury to the Pacific Fund has been sustained.

B. Securities Fraud

{32}	The North Carolina Securities Act ("NCSA") imposes primary and secondary liability for fraudulent conduct in the sale of securities.[4] Plaintiffs seek summary judgment against all Defendants on their NCSA claims. Defendants Lackey and Saldarini have moved for summary judgment seeking dismissal of Plaintiffs' NCSA claims against them.

{33}	Plaintiffs contend that each Defendant is primarily liable under the NCSA for Plaintiffs' losses. Through N.C.G.S. §§ 78A-56(a)(1) and 78A-56(a)(2), the NCSA "delineates two different pathways to primary liability." *NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC 12 ¶ 51 (N.C. Super. Ct. Feb. 19, 2013), www.ncbusinesscourt.net/opinions/2013_NCBC_12.pdf (granting defendants' motions to dismiss in part). Plaintiffs seek to hold Defendants primarily liable under § 78A-56(a)(2) here.[5]

{34}	N.C.G.S. § 78A-56(a)(2) imposes primary civil liability upon "an offeror or seller of a security who (1) makes any untrue statement of a material fact, or (2) fails to state a material fact necessary for a statement which was made to not be misleading." *NNN Durham Office Portfolio 1, LLC*, 2013 NCBC 12 at ¶ 64. To avoid primary liability, an offeror or seller must prove "he did not know, and in the exercise of reasonable care could not have known[] of the truth or omission." *Id.*; *Latta v. Rainey*, 202 N.C. App. 587, 598, 689 S.E.2d 898, 908 (2010). Section 78A-56(a)(2) "does not additionally require proof of scienter or justifiable reliance." *NNN Durham Office Portfolio 1, LLC*, 2013 NCBC 12 at ¶ 66.

{35}	Plaintiffs further assert that Defendants Lackey and Saldarini are secondarily liable under the NCSA. If Plaintiffs can prove that an offeror or seller has primary liability under N.C.G.S. § 78A-56(a)(2), secondary liability will lie for

---

[4] The parties agree that Plaintiffs' investment in Pacific Fund constituted a sale of securities. (*See* Pls.' Br. Supp. Mot., p. 14; *see also* Defs.' Br. Supp. Mot., p. 18.)

[5] For purposes of Plaintiffs' Motion, Atkinson's primary liability claim under N.C.G.S. § 78A-56(a)(2) is based on the DeBordieu investment opportunity only. Mitchell and O'Grady's § 78A-56(a)(2) claims are based on DeBordieu, as well as on Mariner's Walk and Bulls Bay. (Pls.' Br. Supp. Mot., p. 10.)

"[e]very person who directly or indirectly controls [that person], every partner, officer, or director of the person, every person occupying a similar status or performing similar functions, and every dealer or salesman who materially aids in the sale," unless that person proves that he "did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  N.C.G.S. § 78A-56(c)(1) (2014).

{36}  The Court takes Plaintiffs' allegations under the NCSA against each Defendant in turn.

i. Plaintiffs' NCSA Claims against Mehler, Pacific Fund, and Pacific Capital

{37}  Defendants do not dispute that Mehler and the Pacific Fund are offerors or sellers of securities under the NCSA and therefore primarily liable for any misrepresentations they made in the solicitation of Plaintiffs' investments in the Pacific Fund.

{38}  Plaintiffs argue that Pacific Capital is also directly liable as an offeror or seller because it was vested with "sole, full, exclusive and complete power and authority to manage the affairs of the [Pacific Fund] and to perform any and all acts on behalf of the [Pacific Fund] that [Pacific Capital] deem[ed] appropriate and necessary."  (Pls.' Br. Supp. Mot., p. 16.)

{39}  It is undisputed that Mehler was authorized to manage and solicit investments on behalf of the Pacific Fund by virtue of his management role in Pacific Capital.  It is also undisputed that Mehler was acting at all times within the scope of the authority provided to him by Pacific Capital and that Mehler directly solicited Plaintiffs' investments in the Pacific Fund. *See Overton v. Henderson*, 28 N.C. App. 699, 701, 222 S.E.2d 724, 726 (1976) ("The principal is liable for the acts of his agent, whether malicious or negligent . . . [the] test is whether the act was done within the scope of his employment and in the prosecution and furtherance of the business which was given him to do."); *Greensboro Hous. Auth. v. Kirkpatrick & Assocs.*, 56 N.C. App. 400, 403, 289 S.E.2d 115, 117 (1982) ("The general rule is that a principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority extends, although the

agent does not in fact inform his principal thereof."). Accordingly, the Court concludes that Pacific Capital is an offeror or seller under the NCSA on the undisputed evidence of record.

{40} Turning then to Plaintiffs' contention that summary judgment is proper in its favor against these Defendants, Plaintiffs contend that the undisputed evidence shows that Mehler, Pacific Capital and the Pacific Fund made untrue statements of material fact and failed to state material facts necessary for those statements to not be misleading.

{41} In response, Pacific Capital and the Pacific Fund argue first that the disclaimers and merger clauses contained in the PPM and the Subscription Agreement preclude Plaintiffs as a matter of law from relying on representations beyond the PPM as support for their primary liability claims against these Defendants. The Court disagrees. "Where [as here] there is a claim for fraud in the inducement, defenses based upon the fraudulently induced contract will not bar the claim." *Tradewinds Airlines, Inc. v. C-S Aviation Servs.*, 733 S.E.2d 162, 169 (N.C. Ct. App. 2012); *see, e.g., Laundry Machinery Co. v. Skinner*, 225 N.C. 285, 288–89, 34 S.E.2d 190, 192–93 (1945) (holding that parol evidence could be introduced in contravention of an integration clause in a contract, where there was fraud in the inducement, which "vitiates the contract"); *see also Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 77 fn. 1, 598 S.E.2d 396, 403 (2004) (stating that an alternative rule "would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate") (citations omitted).[6] Accordingly, the Court concludes that the PPM and the Subscription Agreement do not provide Pacific Capital and the Pacific Fund a complete defense to Plaintiffs' NCSA primary liability claim.

{42} Pacific Capital and the Pacific Fund next argue that summary judgment is improper against them because, at the very minimum, there exist genuine issues of

---

[6] To the extent Pacific Capital and the Pacific Fund argue that the disclaimers and merger clauses in the PPM preclude Plaintiffs from contending that their reliance on any other representations was justified, the Court notes that Plaintiffs need not prove justifiable reliance to prevail on their claim under N.C.G.S. §78-56(a)(2). *E.g., NNN Durham Office Portfolio 1, LLC*, 2013 NCBC 12 at ¶¶ 66–68 ("Section 56(a)(2) does not additionally require proof of scienter or justifiable reliance.").

material fact concerning whether Mehler, Pacific Capital or the Pacific Fund misrepresented or concealed facts from Plaintiffs in soliciting their investments, including facts relating to the nature of the Pacific Fund's ownership interest in DeBordieu and the security structure created for the Mariner's Walk and Bulls Bay investments. The Court agrees.

{43} First, as to the DeBordieu investment, Mehler denies that he made the oral representations upon which Plaintiffs rely concerning the Pacific Fund's ownership of property in DeBordieu. Moreover, the PPM – which Plaintiffs acknowledge they received after they received the February 2007 email and the Coastal Development Fund memorandum – explained in detail the nature of the Pacific Fund's investment and the ownership structure of the DeBordieu property at issue and directly contradicted the representations forming the basis of Plaintiffs' claim. Accordingly, the Court finds that there exist genuine issues of material fact concerning whether Mehler, Pacific Capital and the Pacific Fund made actionable misstatements or omissions regarding the DeBordieu investment to sustain a claim for primary liability under N.C.G.S. § 78A-56(a)(2).

{44} Similarly, as to the Mariner's Walk and Bulls Bay investments, the Court finds that the various representations relied upon by Plaintiff – including the statements in the February 2007 email and the Coastal Development Fund memorandum to the effect that the Mariner's Walk and Bulls Bay investments were "secured" – are susceptible to differing interpretations as demonstrated by Defendants' evidence[7] and do not allow the Court to conclude as a matter of law that Mehler, Pacific Capital or the Pacific Fund made a misrepresentation or concealed a material fact in the sale of securities in connection with these two investments.

---

[7] For example, while it is undisputed that the Pacific Fund did not make a secured loan in connection with either the Mariner's Walk or Bulls Bay properties, the evidence shows that the Pacific Fund invested funds in different partnerships that loaned funds to the developers of these projects, secured on each occasion by the assets of the developer and/or by the developer's personal guarantees. The Court concludes that it is for a jury to determine whether Defendants' statements, in context, constituted misrepresentations or omissions of material facts.

{45} For each of these reasons, therefore, the Court denies Plaintiffs' motion for summary judgment on their claims against Mehler, Pacific Capital and the Pacific Fund under N.C.G.S. § 78A-56(a)(2).

ii. Plaintiffs' NCSA Claims against Lackey and Saldarini

    a. Primary Liability

{46} Lackey and Saldarini contest primary liability under the NCSA, contending that Plaintiffs have not shown that Lackey and Saldarini (1) sold or offered to sell securities to Plaintiffs; (2) made false statements to Plaintiffs; or (3) omitted a material fact to Plaintiffs.

{47} The NCSA defines "offer" and "offer to sell" to encompass "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." N.C.G.S. § 78A-2(8)(b) (2014). Ownership of a security is not required to qualify as an offeror or seller of the security under the NCSA. *See, e.g., Skoog v. Harbert Private Equity Fund II, LLC*, 2013 NCBC 17 ¶ 22 (N.C. Super. Ct. Mar. 25, 2013), www.ncbusinesscourt.net/opinions/2013_NCBC_17.pdf (extending primary liability to a person who was not the owner of the security sold).

{48} The North Carolina courts "place[] great emphasis on the solicitation of the buyer as the 'most critical stage of the selling transaction'" in determining who is an offeror or seller of securities. *Id.*; *see State v. Williams*, 98 N.C. App. 274, 281, 390 S.E.2d 746, 750 (1990) (holding that defendant who did not participate in an offer or sale was not an offeror or seller under the NCSA).

{49} Based on its review of the undisputed evidence of record here, the Court finds that neither Lackey nor Saldarini ever sold or offered to sell securities to Plaintiffs as those terms are defined under N.C.G.S. § 78A-2(8)(b). Not only do Plaintiffs admit that all of the information they received concerning the Pacific Fund prior to making their investments was provided by Mehler, but Plaintiffs also acknowledge that they did not receive any oral representations from, or have direct contact with, either Lackey or Saldarini until after they made their Pacific Fund investments and Mehler had departed from Pacific Capital. Plaintiffs point to various facts – for example, that Plaintiffs received emails from Mehler with Lackey's

and Saldarini's names in the signature block with a request to contact "us" – to support its contentions, but Plaintiffs have not identified any evidence showing that Lackey or Saldarini took any action to create, distribute or authorize for distribution any materials that were received by Plaintiffs prior to their investments. (Pls.' Br. Supp. Mot., Exs. A–C.)

{50} Indeed, the only evidence that Lackey and Saldarini arguably made any representations to Plaintiffs arises from Lackey's and Saldarini's acknowledgements that they had an opportunity to review the PPM prior to its dissemination to Plaintiffs. The Court concludes, however, that Plaintiffs have failed to show that the PPM contains any false or misleading material information concerning the Pacific Fund's actual or anticipated investments and, hence, primary liability under N.C.G.S. § 78A-56(a)(2) cannot attach to Lackey and Saldarini based on their pre-dissemination review of that document.[8]

{51} Accordingly, because Plaintiffs have not brought forward any evidence that Lackey or Saldarini solicited Plaintiffs' Pacific Fund investments or misrepresented or omitted a material fact regarding those investments, the Court concludes that Lackey and Saldarini do not have primary liability for Plaintiffs' losses under the NCSA as a matter of law and that therefore Plaintiffs' claims against them on this theory should be dismissed.

b. Secondary Liability

{52} Lackey and Saldarini deny secondary liability under the NCSA and contend that Plaintiffs' claims fail because (1) Plaintiffs have not properly alleged a secondary liability claim under § 78A-56(c)(1); (2) Lackey and Saldarini are not "control persons" of the Pacific Fund within the meaning of the NCSA; and (3) Lackey and Saldarini did not know, and in the exercise of reasonable care could not have known, of Mehler's

---

[8] Plaintiffs put great emphasis on a single statement in the PPM that the Pacific Fund "portfolio holds $2MM worth of investments to date," including "$1MM in DeBordieu Colony," as evidence of Defendants' misrepresentations regarding the DeBordieu investment. In light of the expansive and detailed description of the DeBordieu investment opportunity elsewhere in the PPM (Pls.' Br. Supp. Mot., Ex. M, p. 12), however, the Court concludes that Plaintiffs have shown, at most, an inconsistency within the PPM, not an actionable misrepresentation by any Defendant.

alleged misrepresentations, thus satisfying the affirmative defense permitted under § 78A-56(c)(1).

{53} The Business Court (Gale, J.) has set out the standard for pleading a claim for secondary liability under the NCSA:

> In sum, to state a cause of action for secondary liability under § 56(c)(1), in addition to proof of primary liability, a plaintiff must plead that the defendant fits within the category of persons specified in § 56(c)(1). In those actions, the defendant may escape liability through an affirmative defense based on lack of knowledge.

*NNN Durham Office Portfolio 1, LLC*, 2013 NCBC 12 at ¶ 80.

{54} In paragraphs 17 and 18 of the Complaint, Plaintiffs allege Lackey and Saldarini "were listed, and held themselves out as, [Pacific Capital's] member and principals," and that Pacific Capital was the Pacific Fund's "founder and organizer, and received management fees from the [Pacific Fund]." (Compl. ¶¶ 17–18.) Plaintiffs further allege that Lackey and Saldarini were agents of Pacific Capital and/or the Pacific Fund (Compl. ¶ 117), contend that Pacific Capital and the Pacific Fund made false representations and concealed material facts with the intent to deceive Plaintiffs "under the direction" of Lackey and Saldarini (Compl. ¶ 136), allege claims of primary liability against the corporate Defendants for their alleged misrepresentations and omissions, and generally allege, as against all Defendants, including Lackey and Saldarini, and without specifying whether they claim through primary or secondary liability, that "[Plaintiffs] are entitled to recover the investment amount paid for the securities, together with interest, costs and attorneys' fees as allowed by law under N.C. Gen. Stat. § 78A-56." (*See* Compl. ¶¶ 115–22).

{55} When liberally construed in light of controlling North Carolina precedent, the Court concludes that the Complaint broadly but adequately alleges that Lackey and Saldarini directly or indirectly controlled Pacific Capital and the Pacific Fund and put Defendants on notice of Plaintiffs' claim for secondary liability against Lackey and Saldarini under N.C.G.S. § 78A-56(c)(1).[9] *See, e.g., Stanback v. Stanback*,

---

[9] Indeed, Lackey and Saldarini appear to have been sufficiently on notice of Plaintiffs' secondary liability claim to advance the statutory affirmative defense to that claim in moving for summary judgment, asserting that "[t]here is no evidence that the Individual Defendants knew, or in the

297 N.C. 181, 202, 254 S.E.2d 611, 625 (1979) ("when the allegations in the complaint give sufficient notice of the wrong complained of an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory"); *North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co.*, 32 N.C. App. 400, 232 S.E.2d 846 (1977) (holding court may grant any relief to which a party is entitled, regardless of whether it has been demanded in the pleadings; "it is not a crucial error to demand the wrong relief"), *affirmed*, 294 N.C. 73, 240 S.E.2d 345 (1978); *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) ("In analyzing the sufficiency of the complaint, the complaint must be liberally construed."); *see also, e.g., Ellison v. Ramos*, 130 N.C. App. 389, 395, 502 S.E.2d 891, 895 (1998) ("[T]he policy behind notice pleading is to resolve controversies on the merits, after an opportunity for discovery, instead of resolving them based on the technicalities of pleading."); *Haynie v. Cobb*, 207 N.C. App. 143, 148–49, 698 S.E.2d 194, 198 (2010) ("Pleadings should be construed liberally and are sufficient if they give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial.") (quotations and citations omitted).

{56} Having concluded that Plaintiffs put Defendants on notice of their claim for secondary liability, the Court next addresses whether secondary liability has either been established as a matter of law as Plaintiffs contend, or defeated as a matter of law as Lackey and Saldarini contend.

{57} For secondary liability to obtain, Plaintiffs must first show that Lackey and Saldarini (1) directly or indirectly controlled a person or entity (2) who has made a misrepresentation or concealed a material fact in the sale of securities (*i.e.*, were "control persons"). *See* N.C.G.S. § 78A-56(c)(1). Once Plaintiffs make this showing, Lackey and Saldarini may prevail under N.C.G.S. § 78A-56(c)(1) if they can establish that they did not know, and in the exercise of reasonable care could not have known, of Mehler's alleged misrepresentations.

---

exercise of reasonable care could have known that Mehler made private oral misrepresentations to Plaintiffs about anything." (Defs.' Br. Supp. Mot., p. 13–14 (citing N.C.G.S. § 78A-56(c)(1)).)

{58}  As to the issue of control, Lackey and Saldarini maintain that they are not control persons within the meaning of the NCSA because Pacific Capital – not Lackey or Saldarini in their individual capacities – is the manager of Pacific Fund and thus the person or entity that "controlled" Pacific Fund for purposes of secondary liability analysis under N.C.G.S. § 78A-56(c).

{59}  Because there are few North Carolina state court decisions interpreting the "control person" standard under the NCSA, the Court looks to the "analogous federal control person liability statutes, such as 15 U.S.C. § 77o, when interpreting § 78A-56(c)." *NNN Durham Office Portfolio 1, LLC*, 2013 NCBC 12 at ¶ 70 (citing *Hunt v. Miller*, 908 F.2d 1210, 1214 fn.5 (4th Cir. 1990)).

{60}  Federal courts often invoke a two-part test to determine control person liability under Section 77o. Under this test, "[f]irst, the 'control person' needs to have actually exercised general control over the operations of the wrongdoer, and second, the control person must have had the power or ability – even if not exercised – to control the specific transaction or activity that is alleged to give rise to liability." *Donohoe v. Consolidated Operating & Prod. Corp.*, 30 F.3d 907, 911–912 (7th Cir. 1994); *see, e.g., In re Microstrategy Securities Litigation*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000) ("A plaintiff satisfies the control requirement . . . by pleading facts showing that the controlling defendant 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'"). As one federal court has noted, "[i]n the securities context, control means 'the possession, direct or indirect, of the power to direct or to cause the direction of the management and policies of [an entity], whether through the ownership of voting securities, by contract, or otherwise.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1270 (1st Cir. 1991); *see also Index Fund, Inc. v. Hagopian*, 609 F. Supp. 499, 511 (S.D.N.Y. 1985) ("Congress enacted the control provisions in order to impose liability on parties 'who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons.'") (quoting *Lanza v. Drexel*, 479 F.2d 1277, 1299 (2nd Cir. 1973)).

{61} The Fourth Circuit has adopted a nearly identical test to analyze control person liability under another federal statute governing sellers of securities, 15 U.S.C. § 78t(a). *See, e.g., Waterford Inv. Servs. v. Bosco*, 682 F.3d 348, 354 (4th Cir. 2012) ("In determining 'whether a defendant possessed the requisite control,' in that context, a court gives 'heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof.'"). The Fourth Circuit has also observed that "[t]he controlling persons provisions contain a state-of-mind condition that requires a showing of something more than negligence to establish liability." *Carpenter v. Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir. 1979) (discussing 15 U.S.C. § 77o and 20 U.S.C. § 78t(a)).

{62} Relying upon these principles from federal law to interpret N.C.G.S. § 78A-56(c) here, the Court concludes that there exist genuine issues of material fact concerning whether Lackey and Saldarini directly or indirectly controlled the Pacific Fund for purposes of secondary liability analysis. Although Lackey and Saldarini point to evidence that prior to Mehler's departure in 2009, he had nearly sole responsibility for monitoring investor communications and managing the day-to-day operations of the Pacific Fund, all with little or no input from Lackey and Saldarini (Pls.' Br. Supp. Mot., Ex. E; Defs.' Br. Supp. Mot., p. 3), and further that they did not solicit Plaintiffs to induce their investments, Plaintiffs advance contrary evidence suggesting, *inter alia*, that Lackey and Saldarini actively promoted the Pacific Fund to other investors, held meetings with Mehler concerning the Pacific Fund and its investments, reviewed and approved the PPM before it was finalized, were listed as two of the "principal members" of the Pacific Fund's manager (i.e., Pacific Capital) in the Pacific Fund's Operating Agreement (Pls.' Br. Supp. Mot., Ex. M),[10] and retained authority to, and allegedly took actions from time to time to, control and direct Pacific Capital in its activities as manager of the Pacific Fund. (Pls.' Br. Supp. Mot., Ex. F.) As such, the Court cannot determine on the current record that Lackey and Saldarini

---

[10] The Operating Agreement states that "The principal members of the Manager, Scott Mehler, Mac Lackey and Ross Saldarini ("Principals") shall constitute the individuals with management authority for all purposes under the Act and other applicable law." (Pls.' Br. Supp. Mot., Ex. M, p. 61.)

either controlled, or did not control, the Pacific Fund as a matter of law under N.C.G.S. § 78A-56(c).

{63} In addition, even if Lackey and Saldarini "controlled" Pacific Capital and the Pacific Fund for purposes of the NCSA, the Court's earlier conclusion that genuine issues of material fact exist concerning whether Pacific Capital or the Pacific Fund misrepresented or concealed material facts from Plaintiffs concerning DeBordieu, Mariner's Walk and Bulls Bay in soliciting their investments precludes summary judgment for Plaintiffs on a secondary liability theory.

{64} Regardless of the foregoing, however, Lackey and Saldarini can avoid secondary liability under § 78A-56(c) if they can establish as a matter of law that they did not know, and in the exercise of reasonable care could not have known, of Mehler's alleged misrepresentations. In support, Lackey and Saldarini argue that they did not prepare, review or disseminate any of the written materials about which Plaintiffs complain and were not aware and did not approve Mehler's alleged oral misrepresentations and omissions concerning DeBordieu. Plaintiffs contend for their part that because Lackey and Saldarini, as managers of Pacific Capital, had the power to cause Pacific Capital to demand inspection of "[i]nformation from which the status of the business and the financial condition of the LLC may be ascertained" under N.C.G.S. § 57D-3-04, Lackey and Saldarini could have known of Mehler's misrepresentations in the exercise of reasonable care as a matter of law, thus defeating the affirmative defense. Plaintiffs also argue that Lackey and Saldarini had regular and frequent contact with Mehler concerning the Pacific Fund investments and emphasize that their names appeared on various Pacific Fund investment documents, all of which Plaintiffs contend establish that these Defendants should have known of the alleged misrepresentations and omissions that form the basis of Plaintiffs' claim.

{65} Based upon its review of the conflicting evidence of record, the Court finds that there exists a genuine issue of material fact as to whether Lackey and Saldarini knew, or in the exercise of reasonable care could have known, of Mehler's alleged misrepresentations concerning the DeBordieu, Mariner's Walk and Bulls Bay

investments. *See, e.g., Ballenger v. Crowell*, 38 N.C. App. 50, 60, 247 S.E.2d 287, 294-295, (1978) (holding that where there is "conflicting evidence relating to whether [a party] knew or should have known" of a material fact was "a question for the jury to decide").

{66} Accordingly, based on the above, the Court concludes that summary judgment, either for Plaintiffs or for Lackey and Saldarini, is not proper on Plaintiffs' secondary liability claim against these Defendants.

C. Breach of Fiduciary Duty

{67} Plaintiffs seek entry of judgment against all Defendants on their breach of fiduciary duty claim. At the same time, Defendants Lackey and Saldarini seek summary judgment dismissing Plaintiffs' breach of fiduciary duty claim against them.

{68} To establish a claim for breach of fiduciary duty, "there must first exist a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). A fiduciary duty is "generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence.'" *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014). A fiduciary duty exists where "a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." *Dalton*, 353 N.C. at 651–52, 548 S.E.2d at 707–08 (citation omitted) (internal quotation marks and emphasis omitted).

{69} Under the North Carolina Limited Liability Company Act, N.C. Gen. Stat. § 57C-1-01 et seq., members of an LLC are treated like corporate shareholders and do not owe fiduciary duties to other members or the company. *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). A manager of an LLC, however, shall "discharge his duties as manager in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the [LLC]." *BOGNC, LLC v. Cornelius NC Self-Storage, LLC*, 2013 NCBC

26 ¶ 104 (N.C. Super. Ct. May 1, 2013), http://www.ncbusinesscourt.net/opinions/2013_NCBC_26.pdf. These fiduciary duties "are owed by the manager to the company, rather than to other managers." *Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137.

{70} Plaintiffs contend that Defendants breached their fiduciary duty to Plaintiffs by failing to advise them of the true nature of the Pacific Fund's DeBordieu, Mariner's Walk and Bulls Bay investments, thereby causing Plaintiffs to invest in the Pacific Fund and lose the value of their investments.

{71} Turning first to Mehler, Pacific Capital, and the Pacific Fund, the Court concludes that summary judgment is improper in light of the Court's earlier conclusion that a genuine issue of material fact exists concerning whether Mehler made a material misstatement or omission that induced Plaintiffs to make their investments in the Pacific Fund. Accordingly, Plaintiffs' Motion on this claim is denied as to Mehler, Pacific Capital, and the Pacific Fund.

{72} As to Lackey and Saldarini, however, the Court concludes that there is no evidence of record that suggests that either of these Defendants owed a fiduciary duty to Plaintiffs. These Defendants did not owe Plaintiffs a fiduciary duty due to their status as managers of Pacific Capital. *See, e.g., Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137 (LLC manager's fiduciary duties "owed to the company, rather than to other managers"). None of the contractual documents Plaintiffs entered with any of the Defendants created a fiduciary duty running from these Defendants; to the contrary, these documents expressly disavowed the creation of any fiduciary duty.[11] Plaintiffs point to no other source for the existence of a fiduciary duty under the law. *See, e.g., Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906–07 (1931). ("A fiduciary relationship can be either de jure, in which the fiduciary relationship arises as a matter of law from the legal nature of the relationship, or de facto, where the fiduciary relationship arises from the particular circumstances of the relationship between the parties."). Further, there is no evidence of a pre-investment

---

[11] *See supra*, fn. 1.

misrepresentation by either Lackey or Saldarini that could create a "special duty" to Plaintiffs as found in *Howell*. Accordingly, the Court determines that Lackey and Saldarini did not owe Plaintiffs a fiduciary duty on the undisputed facts of record here.[12] For each of these reasons, therefore, the Court concludes that summary judgment dismissing Plaintiffs' breach of fiduciary duty claims against Lackey and Saldarini is proper.

D. <u>Common Law Fraud</u>

{73} Lackey and Saldarini seek summary judgment on Plaintiffs' fraud claim.[13]

{74} "'The essential elements of fraud [in the inducement] are: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Tradewinds Airlines, Inc.*, 733 S.E.2d at 168 (N.C. Ct. App. 2012) (citation omitted). A misrepresentation or omission is "material" if, had it been known to the party, it would have influenced the party's judgment or decision to act. *Godfrey,* 165 N.C. App. at 75–76, 598 S.E.2d at 402. In addition, "[j]ustifiable reliance is an essential element of . . . fraud . . . ." *Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996).

{75} For the reasons set forth above in connection with Plaintiffs' NCSA claim against these Defendants, the Court finds that Plaintiffs have not brought forward any evidence that Lackey or Saldarini fraudulently solicited Plaintiffs' Pacific Fund investments. To the contrary, there is no evidence of record that Lackey and Saldarini actively solicited Plaintiffs' investments in the Pacific Fund, and the Court has previously concluded that the PPM, the only document arguably disseminated by Lackey and Saldarini prior to Plaintiffs' investments were made, is not false or misleading.

---

[12] In addition, even if Lackey and Saldarini were deemed to owe Plaintiffs a fiduciary duty, the Court's earlier conclusion that Plaintiffs have not brought forward evidence to show that either of these Defendants made any misrepresentations to Plaintiffs would likewise defeat Plaintiffs' claim for breach of fiduciary duty against these Defendants as a matter of law.

[13] Plaintiffs do not seek summary judgment on their fraud claim against any Defendant.

{76} Moreover, Plaintiffs have failed to show that they justifiably relied on any alleged misrepresentations or omissions by Lackey and Saldarini. *See, e.g., Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007) ("[A]ny reliance on the allegedly false representations must be reasonable"). Indeed, the information disclosed in the PPM concerning the Pacific Fund investments, which Plaintiffs received after the alleged misconduct and before they made their investments, plainly contradicted the alleged misrepresentations and omissions about which Plaintiffs complain. Yet the evidence is undisputed that Plaintiffs failed to make further inquiry, despite the expansive, all caps, bold disclaimers in the PPM advising Plaintiffs that no person had been authorized to make any representations other than as contained in the PPM.[14]

{77} Our courts have concluded that "[r]eliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate; or if the plaintiff was informed of the true condition of the

---

[14] Among other provisions, the PPM stated:

> NO PERSON HAS BEEN AUTHORIZED IN CONNECTION WITH THIS OFFERING TO MAKE ANY REPRESENTATIONS OTHER THAN AS CONTAINED IN THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM. STATEMENTS IN THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM ARE MADE AS OF THE DATE OF THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM, UNLESS STATED OTHERWISE HEREIN, AND NEITHER THE DELIVERY OF THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM AT ANY TIME, NOR ANY SALE HEREUNDER, SHALL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO SUCH DATE . . . . PRIOR TO THE FINAL CLOSING OF THE COMPANY, THE MANAGERRESERVES (sic) THE RIGHT TO MODIFY THE TERMS OF THE OFFERING AND THE LIMITED LIABILITY COMPANYINTERESTS (sic) DESCRIBED HEREIN.
> * * *
> IN THE SUBSCRIPTION DOCUMENTS, PROSPECTIVE INVESTORS WILL BE REQUIRED TO REPRESENT AND WARRANT THAT IN MAKING THEIR INVESTMENT DECISION, THEY HAVE RELIED SOLELY UPON THE INFORMATION CONTAINED IN THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM, INCLUDING THE INFORMATION IN THE AGREEMENT OF LIMITED LIABILITY COMPANYAND (sic) THE SUBSCRIPTION DOCUMENTS AND NOT ON ANY ADDITIONAL OR DIFFERING INFORMATION THAT SUCH PROSPECTIVE INVESTOR MAY HAVE DEVELOPED IN UNDERTAKING THEIR OWN DUE DILIGENCE.

(Def. Br. Supp. Mot., p. 3–4; Pls.' Br. Supp. Mot., Ex. M.) (emphasis in original).

subject matter." *L'Heureux Enters., Inc. v. Port City Java, Inc.*, 2009 NCBC 24 ¶ 37 (N.C. Super. Ct. Sept. 4, 2009), www.ncbusinesscourt.net/opinions/2009_NCBC_24.pdf (granting summary judgment); *see also Calloway v. Wyatt*, 246 N.C. 129, 134–35, 97 S.E.2d 881, 885–86 (1957); *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App., 19, 26, 581 S.E.2d 452, 458 (2003).

{78}    As a result, the Court concludes that Plaintiffs have failed to bring forward evidence from which a jury could reasonably conclude that this essential element of Plaintiffs' fraud claim has been established. *See, e.g.*, *Hit Prods. Corp. v. Anchor Fin. Corp.*, 2000 U.S. App. LEXIS 11982, *6–*8 (4th Cir., May 31, 2000) (dismissing fraud claim where plaintiff knew of discrepancies and relied without further investigation); *Foremost Guaranty Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990) ("[T]here could be no reasonable reliance on . . . oral statements in the face of plainly contradictory contractual language."); *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir. 1991) ("Investors are charged with constructive knowledge of the risks and warnings contained in the private placement memoranda."); *Caper Corp v. Wells Fargo Bank, N.A.*, 578 Fed. Appx. 276, 281 (4th Cir., July 17, 2014) (unpublished) (citing *Dallaire*, 367 N.C. at 369, 760 S.E.2d at 267 ("A plaintiff . . . 'cannot establish justified reliance . . . if [it] fails to make reasonable inquiry regarding the alleged statement.'")).

{79}    For each of these reasons, the Court concludes that Plaintiffs' fraud claim against Lackey and Saldarini should be dismissed.[15]

---

[15] Plaintiffs have not pled but contend for the first time in their motion for summary judgment that Lackey and Saldarini committed fraud by disseminating inaccurate investor updates after Plaintiffs made their investments. (Pls.' Br. Supp. Mot., Exs. K–L.) The Court declines to consider these late-asserted arguments, particularly given that Plaintiffs did not plead any factual allegations regarding the investor updates and have not sought to amend the Complaint to assert this new theory of fraud. *See, e.g., Isenhour v. Universal Underwriters Ins. Co.*, 345 N.C. 151, 154, 478 S.E.2d 197, 199 (1996) ("Undue delay is a proper reason for denying a motion to amend a pleading."); *Wall v. Fry*, 162 N.C. App. 73, 80, 590 S.E.2d 283, 287 (2004) ("A ruling on a motion to amend a pleading following the time allowed for amending pleadings as a matter of course is left to the sound discretion of the trial court.").

E.  Constructive Fraud

{80}   Plaintiffs seek summary judgment against all Defendants on their claim for constructive fraud.   Lackey and Saldarini seek summary judgment dismissing Plaintiffs' claim against them for constructive fraud.

{81}   Constructive fraud "arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which [a] defendant is alleged to have taken advantage of his position of trust to the hurt of the plaintiff." *Forbis v. Neal*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007). Further, "[w]hen . . . [a] superior party obtains a possible benefit through the alleged abuse of [a] confidential or fiduciary relationship, the aggrieved party is entitled to a presumption that constructive fraud occurred." *Id.* at 529, 649 S.E.2d at 388.  The superior party can rebut this presumption by showing that no fraud occurred. *Hajmm Co. v. House of Raeford Farms, Inc.*, 94 N.C. App. 1, 12, 379 S.E.3d 868, 874 (1989), *reversed in part on other grounds*, 328 N.C. 578, 403 S.E.2d 483 (1991); *Gerringer v. Pfaff*, 738 S.E.2d 453, *6 (N.C. Ct. App., Feb. 19, 2013) (unpublished) ("Thus, when a plaintiff alleges constructive fraud and a defendant files a motion for summary judgment, the defendant, as the moving party, bears the burden of establishing, as an affirmative defense, that he dealt fairly with the plaintiff.").

{82}   Accordingly, because the Court has found that Lackey and Saldarini did not owe Plaintiffs a fiduciary duty, Plaintiffs' claim for constructive fraud against these Defendants necessarily fails.

{83}   In addition, North Carolina courts have consistently held that payment of a fee for work cannot serve as the basis for a claim of constructive fraud.  *See NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 114, 535 S.E.2d 597, 602 (2000) (holding that "payment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage"); *see also Clay v. Monroe*, 189 N.C. App. 482, 488, 658 S.E.2d 532, 537 (2008) (requiring the plaintiff to allege "that the benefit sought was more than . . . payment of a fee to a defendant for work it actually performed").

{84}  It is undisputed that the only benefit Plaintiffs claim Lackey and Saldarini received from their alleged fraud is Pacific Capital's receipt (and through Pacific Capital, Lackey and Saldarini's receipt) of management fees for the work performed in managing the Pacific Fund.  As such, Plaintiffs have not brought forward evidence of a legally cognizable benefit to these Defendants under North Carolina law to support their claim for constructive fraud.  The Court therefore concludes that, for this additional reason, Plaintiffs' constructive fraud claim fails as a matter of law against Lackey and Saldarini.

F.  UDTPA

{85}  Plaintiffs seek summary judgment against all Defendants on Plaintiffs' claim for unfair and deceptive trade practices under N.C.G.S. § 75-1.1.  Defendants Lackey, Saldarini, Pacific Capital and the Pacific Fund seek summary judgment dismissing Plaintiffs' UDTPA claim against them.

{86}  "A claim of unfair and deceptive trade practices under N.C.G.S. § 75-1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant."  *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 738, 659 S.E.2d 483, 488 (2008) (citation omitted).  "'A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and a 'practice is deceptive if it has the capacity or tendency to deceive.'"  *Bumpers v. Cmty. Bank of Va.*, 367 N.C. 81, 91, 747 S.E.2d 220, 228 (2013).  Securities transactions arising under the NCSA are beyond the scope of N.C.G.S. § 75-1.1.  *Hajmm Co.*, 328 N.C. at 593, 403 S.E.2d at 492 (1991).

{87}  Plaintiffs attempt to overcome the securities exception to the UDTPA by arguing that their UDTPA claim is based solely on the facts supporting their constructive fraud claim and not on their underlying purchase of securities.  (Compl. ¶ 153.)  Plaintiffs' argument fails, however, for two reasons.  First, the Court's dismissal of Plaintiffs' constructive fraud claim necessitates, under Plaintiffs' theory, the dismissal of Plaintiffs' UDTPA claim. And second, because the gravamen of

Plaintiffs' constructive fraud claim, like their other claims, is that Defendants fraudulently induced Plaintiffs to invest in securities, Plaintiffs' UDTPA claim must be dismissed. *Hajmm Co.*, 328 N.C. at 593, 403 S.E.2d at 492. For each of these reasons, therefore, Plaintiffs' UDTPA claim fails as a matter of law against all Defendants.

G. <u>Statute of Limitations (Atkinson's Remaining Claims)</u>

{88} In addition to their other arguments, Defendants Lackey, Saldarini, Pacific Capital and the Pacific Fund seek summary judgment on Atkinson's claims for securities fraud, fraud and breach of fiduciary duty based on the expiration of the applicable statutes of limitations.[16]

{89} The statute of limitations for a securities fraud claim under the NCSA is three years. *Latta v. Rainey*, 202 N.C. App. at 596, 689 S.E.2d at 906 (citing N.C.G.S. § 78A-56(f)). The NCSA provides that the three year statute of limitations runs from the date "the person discovers facts constituting the violation." *Latta*, 202 N.C. App. at 596, 689 S.E.2d at 906.

{90} "An action for fraud accrues when the aggrieved party discovers the facts constituting the fraud, or when, in the exercise of due diligence, such facts should have been discovered." *Shepherd v. Shepherd*, 57 N.C. App. 680, 682, 292 S.E.2d 169, 170 (1982) (citing *Wilson v. Development Co.*, 276 N.C. 198, 171 S.E. 2d 873 (1970)). "[Where] the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the mistake or discrepancy but failed to do so, the absence of reasonable diligence is established as a matter of law." *Grubb Props., Inc. v. Simms Inv. Co.*, 101 N.C. App. 498, 501, 400 S.E.2d 85, 88 (1991).

{91} "Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations . . . ." *Toomer v. Branch Banking & Trust Co.,* 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005).

---

[16] Defendants do not move to dismiss Atkinson's claims for constructive fraud and violation of N.C.G.S. § 75-1.1 on statute of limitations grounds.

{92} The Court is required to calculate the running of the statutes of limitations from the date Atkinson discovered facts that were materially different from the alleged representations made to him.

{93} It is undisputed that in September 2008, Atkinson attended a meeting convened by Mehler. (Pls.' Br. Supp. Mot., Ex. G; Defs.' Br. Supp. Mot., Ex. 3.) Atkinson testified that he learned at that meeting that the Bulls Bay and Mariner's Walk investments were not secured or not adequately secured. Atkinson also testified, however, that he did not, at that time, realize that the structures of the Bulls Bay and Mariner's Walk deals were inconsistent with the documents he had reviewed prior to his investment. (*Id.*; Pls.' Resp. Defs.' Mot., p. 6.) Neither Mitchell nor O'Grady attended the September 2008 meeting.

{94} "Whether a plaintiff has exercised due diligence is ordinarily an issue of fact for the jury absent dispositive or conclusive evidence indicating neglect by the plaintiff as a matter of law." *Ward v. Fogel*, 2014 N.C. App. LEXIS 1248, *17–*19 (N.C. Ct. App., Dec. 2, 2014). Based on Atkinson's admission that he discovered the true security structure of Mariner's Walk and Bulls Bay at the September 2008 meeting, however, the Court concludes that Atkinson was on notice at that time that Defendants allegedly misrepresented or omitted material facts as to these investments and should have then discovered the alleged fraud. Accordingly, the Court concludes that the statute of limitations on Atkinson's claims for securities fraud, common law fraud and breach of fiduciary duty began to run at that time. Given that there is no evidence that the DeBordieu investment was discussed at the September 2008 meeting, however, the Court cannot conclude as a matter of law that the new information about Mariner's Walk and Bulls Bay was sufficient to put Atkinson on notice that Defendants had allegedly misrepresented the true nature of the Pacific Fund's DeBordieu investment prior to that time.

{95} As a result, the Court concludes that the statute of limitations has run on Atkinson's claims for securities fraud, fraud and breach of fiduciary duty to the extent

those claims are based on alleged representations made in connection with the Mariner's Walk and Bulls Bay investments.[17]

V.

CONCLUSION

{96}    Based on the foregoing, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment and **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment as set forth herein;

{97}    Plaintiffs' claims against Lackey, Saldarini, Mehler, the Pacific Fund, and Pacific Capital under N.C.G.S. § 75-1.1 are hereby dismissed with prejudice;

{98}    Plaintiffs' claims against Lackey and Saldarini for fraud, breach of fiduciary duty, constructive fraud, and primary liability for securities fraud under N.C.G.S. § 78A-56(a)(2) are hereby dismissed with prejudice;

{99}    Atkinson's claim for securities fraud against Mehler, the Pacific Fund, and Pacific Capital for primary liability under N.C.G.S. § 78A-56(a)(2) based on the Pacific Fund's investments in Mariner's Walk and Bulls Bay is hereby dismissed with prejudice;

{100} Atkinson's claim for securities fraud against Lackey and Saldarini for secondary liability under N.C.G.S. § 78A-56(c)(1) based on the Pacific Fund's investments in Mariner's Walk and Bulls Bay is hereby dismissed with prejudice;

{101} Atkinson's claims for fraud and breach of fiduciary duty against Mehler, the Pacific Fund, and Pacific Capital based on the Pacific Fund's investments in Mariner's Walk and Bulls Bay are hereby dismissed with prejudice; and

{102}   All other requested relief is **DENIED**.

**SO ORDERED**, this the 27th day of February 2015.

---

[17] For the reasons set forth previously in this Order and Opinion, the Court dismisses Atkinson's claims against Lackey and Saldarini for fraud, breach of fiduciary duty, constructive fraud, and primary liability under N.C.G.S. § 78A-56(a)(2).